CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 1 5 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL M. ROBERTSON, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:06cv746 |
| v. | ) |
| | ) |
| MICHAEL ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Michael M. Robertson ("Robertson") brought this action for review of the decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") under Title XIV of the Social Security Act, 42 U.S.C. §§ 1381-1383. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision. Substantial evidence supports the Administrative Law Judge's ("ALJ") decision as the ALJ properly weighed the opinion of plaintiff's treating physician, Dr. Cummings, before declining to afford it controlling weight. Therefore, Robertson's Motion for Summary Judgment is denied and the ALJ's decision is affirmed.

I.

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the

Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate DIB and SSI claims. 20 C.F.R. §§ 404.1520 (2006); see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C.A. § 423(d)(2)(A) (West 2004); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

## II.

Robertson was born on May 17, 1969 and received his General Equivalency Degree ("GED") in 1993. (Administrative Record, hereinafter "R." at 18) Robertson's previously worked as a warehouse worker and lawn service worker. (R. 62, 77) Robertson alleges that he is disabled due to post traumatic degenerative joint disease of the wrists and elbows and degenerative disc disease of the lumbar spine. (R. 15) Robertson protectively filed his application for SSI on January 7, 2003 alleging an onset date of August 30, 1990. (R. 61-62) Robertson's application was denied initially and upon reconsideration. (R. 43-57) The ALJ held an administrative hearing in this matter on May 24, 2006, (R. 21-42), and issued a decision denying benefits on August 22, 2006. The Appeals Council declined to review Robertson's case and the ALJ's decision became the final decision of the Commissioner. (R. 5)

The medical evidence in the record does not begin until March 14, 2003 when Dr. Humphries saw Robertson for arthritis in his wrists and elbows. (R. 116) Dr. Humphries diagnosed Robertson with post traumatic degenerative joint disease and chronic low back pain. (R. 118) Dr. Humphries opined that Robertson would be limited to sitting, standing, and walking six hours in an eight-hour workday, to lifting 25 pounds occasionally and ten pounds frequently, to climbing, kneeling, and crawling occasionally. (R. 118-119) Dr. Humphries also opined that Robertson would have no restrictions on stooping or crouching and no restrictions on heights, hazards, or fumes. (R. 119)

Dr. Cummings examined Robertson on October 8, 2004 and noted that a lumbar x-ray showed minimal scoliosis and minimal degenerate changes at L1. (R. 131) Additionally, an x-ray of the wrist revealed an old fracture of the distal thumb and a metacarpal screw. (R. 131) Dr.

Cummings also noted that Robertson suffered from chronic back pain and prescribed Flexeril for the condition. (R. 131) On October 21, 2004, Robertson had x-rays of his spine, left wrist, and left elbow taken. (R. 134) Dr. Gandee reviewed the x-rays and concluded that the x-ray of the lumbar spine was normal. (R. 134) Dr. Gandee noted the screw in Robertson's wrist x-ray and concluded that otherwise the x-ray was normal. (R. 134) The x-ray of Robertson's left elbow revealed marked soft tissue bone formation along the anterior aspect of the elbow joint and several small soft tissue calcifications along the lateral humeral epicondyle. (R. 134) The elbow x-ray did not reveal anything else and was negative otherwise. (R. 135)

Dr. Humphries again examined Robertson on October 22, 2004. (R. 137) Dr. Humphries opined that Robertson suffered from post traumatic degenerative joint disease of both elbows and his left wrist. (R. 139) Additionally, Humphries diagnosed Robertson as suffering from chronic lumbar strain with mild neuropathy of the lower extremities and could not rule out degenerative disc disease or degenerative joint disease. (R. 139)

Dr. Hansen saw Robertson from January 11, 2005 through January 25, 2006. (R. 143-44, 171-72). On January 11, 2005, Dr. Hansen diagnosed Robertson as suffering from multi-joint and back pain. (R. 143) Dr. Hansen again saw Robertson on April 19, 2005 and Robertson complained that his back pain remained unchanged and he was now suffering from heartburn. (R. 165) Dr. Hansen believed the heartburn to be the result of lactose intolerance. (R. 165) On July 13, 2005, Dr. Hansen saw Robertson for chronic back pain, but Robertson had not tried the prescription medicine prescribed after the April 19, 2005 visit. (R. 167) Dr. Hansen requested an MRI as a result of this visit and suggested physical therapy. (R. 167)

4

Robertson visited Dr. Jones on July 21, 2005 to begin occupational therapy. (R. 153) Dr. Jones opined that Robertson could benefit greatly and reduce his pain through occupational therapy. (R. 154) Robertson underwent occupational therapy from July 21, 2005 through September 14, 2005, but reported little to no change in his pain throughout the process. (R. 156-62) Robertson discontinued occupational therapy on September 15, 2005. (R. 169)

Dr. Cummings saw Robertson on November 11, 2005 and diagnosed Robertson as suffering from persistent low back pain and discomfort. (R. 178) Dr. Cummings also noted that physical therapy with Robertson proved unsuccessful. (R. 178) Robertson underwent a lumbar MRI on March 28, 2006 that revealed moderate intervertebral disc degeneration, mild facet hypertrophy and a small subligamentous, right paracentral posterior disc protrusion. (R. 177) On April 4, 2006 Dr. Cummings complete a Medical source Statement of Ability to do Work-Related Activities. (R. 173) Dr. Cummings opined that Robertson could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk at least two hours in an 8-hour day, sit for less than six hours in an 8-hour day, and is limited in pushing and/or pulling in his lower extremities. (R. 174) Dr. Cummings based his opinions on Robertson's moderate intervertebral disc degeneration. (R. 174) Furthermore, Dr. Cummings opined that Robertson should only occasionally climb, balance, kneel, crouch, crawl, or stoop. (R. 174)

The ALJ denied Robertson's claims, finding that Robertson could perform light exertion work which involves lifting up to 20 pounds, standing/walking about 6 hours, sitting about 6 hours, no exposure to heights, and limited crouching and crawling. (R. 15) The ALJ afforded great weight to the opinions of Dr. Humphries and the State Agency medical consultants. (R. 15) The ALJ did not afford controlling weight to the April 4, 2006 opinion of Dr. Cummings because

5

Case 7:06-cv-00746-mfu    Document 20    Filed 11/15/07    Page 5 of 9    Pageid#: 60

the ALJ did not believe that the opinion was supported by the objective medical evidence of record. (R. 18) The ALJ specifically found no clinical evidence to support the extreme limitations set forth by Dr. Cummings, noting that medical records only revealed slight reductions in the range of motion of the neck, back, and wrists, no evidence of motor, sensory, or reflex loss, and mild tenderness to palpation of the lower lumbar area. (R. 18) The ALJ also made mention of the fact that Robertson's medical records revealed normal gait and the ability to perform fine manipulation adequately. (R. 18) The ALJ then determined that Robertson could not perform his past relevant work as a warehouse worker or lawn service worker. (R. 18) After soliciting testimony from a Vocational Expert ("VE"), the ALJ determined that jobs exist in significant numbers in the national economy that an individual of Robertson's age, education, work experience, and residual functional capacity ("RFC") could perform. (R. 19)

### III.

Robertson argues that the ALJ erred by failing to give proper weight to plaintiff's treating physician, Dr. Cummings. Robertson argues that the ALJ committed reversible error by not giving greater weight to the opinion of Dr. Cummings and crediting the opinion of Dr. Humphries. Specifically, Robertson believes the opinion of Dr. Cummings should be afforded greater weight because it is substantiated by the March 28, 2006 MRI, an MRI that Dr. Humphries did not have available to him when he examined Robertson.

An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527 (d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p. The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide her reasons for giving a treating physician's opinion certain weight or explain why she discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The ALJ did address the opinion of Dr. Cummings and thoroughly explained why he discredited it. (R. 18) The ALJ, upon review of the record, including the March 28, 2006 MRI, decided to afford Dr. Humphries opinion with greater weight than Dr. Cummings. The ALJ reasoned that Dr. Cummings' opinion was not supported by objective medical evidence in the record and therefore should not be afforded controlling weight. Id. Robertson's reliance on the

March 28, 2006 MRI is misplaced, because standing alone the MRI only revealed mild and moderate symptoms that are insufficient to necessitate the extreme limitations delineated by Dr. Cummings. The MRI cannot be said to be objective clinical evidence to support the limitations offered by Dr. Cummings. As such, the ALJ did not commit reversible error by affording Dr. Cummings' opinion less than controlling weight because it is not supported by the objective clinical and diagnostic evidence of record. Id.

Robertson's argument that Dr. Humphries opinion should be afforded less weight is premised upon the fact that Dr. Humphries did not have the opportunity to review the March 28, 2006 MRI. Dr. Humphries did account for the possibility of degenerative disc disease. (R. 140) Dr. Humphries specifically did not rule out degenerative disc disease and opined that if further testing did reveal that Robertson suffered from degenerative disc disease then he would be limited to occasional stooping or crouching. (R. 140) The March 28, 2006 MRI did in fact reveal moderate to mild disk degeneration, which confirmed Dr. Humphries' opinion, as opposed to negating or discrediting it. As such, the ALJ did not commit reversible error in affording great weight to Dr. Humphries opinion.

Finally, the nature of the treating relationship between Dr. Cummings and Robertson does not lend itself to affording greater weight to the opinion Dr. Cummings as opposed to that of Dr. Humphries. Dr. Cummings saw Robertson twice, the same number of times that Dr. Humphries examined him. Dr. Humphries' clinical notes from the two visits are far more extensive that Dr. Cummings'. Therefore, comparing the nature, length, and treating relationship of Dr. Cummings and Dr. Humphries, the ALJ cannot be said to have committed reversible error by affording greater weight to the opinion of Dr. Humphries.

8

## IV.

In sum, the Commissioner appropriately assessed the medical opinion of Dr. Cummings and explained the weight given to the opinion. In affording greater weight to the opinion of Dr. Humphries, the Commissioner did not commit reversible error. The court affirms the decision of the Commissioner as the decision is supported by substantial evidence.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

**ENTER:** This 15th day of November, 2007.

_____
Michael F. Urbanski
United States Magistrate Judge